UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CHRIS WILLIAMS d/b/a | ) | |
| CANE CREEK SOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:16-CV-232-SNLJ |
| | ) | |
| MEDALIST GOLF, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM and ORDER

This matter is before the Court on the defendant's motion for summary judgment (#25). After an extended briefing schedule, this matter is ripe for disposition.

**I.  Factual Background**

The following facts are undisputed except where indicated.

Plaintiff Chris Williams d/b/a Cane Creek Sod is a company that supplies, grows, and delivers sod. Defendant Medalist, Inc. is a golf course builder that specializes in building high-end golf courses. Medalist agreed to build the Gary Player Design Golf Course at Big Cedar Lodge (the "Project") for Ozarks Golf and Hunt Club, LLC ("Ozarks Golf"). Medalist's project manager, Todd Tilton, solicited sod bids for the Project. Tilton told plaintiff's farmhand, Mark Woodard, that the sod was for use on a high-end golf course for a very important client. Plaintiff submitted a bid to provide Meyer Zoysia sod for the Project. At the time of the bid, around 2015-2016, plaintiff had

1

approximately 65 acres of Meyer Zoysia sod, which had been planted in 2000. On January 2016, Tilton informed Woodard that plaintiff was "in the driver's seat with regard to the Zoysia" and that as long as the owner's director of agronomy approves of the sod, "then it looks good for you." Tilton also informed Woodward that the Project owner's director of agronomy would likely want to visit the farm and inspect the fields.

On February 23 and 24, 2016, plaintiff and Medalist executed a Grass Supplier Agreement (the "Agreement") regarding the Project. Plaintiff understood that he guaranteed that the sod would be of a quality that satisfied the customer and that the quantity in the Agreement was an estimate and that Medalist could use less Meyer Zoysia sod on the Project. Specifically, plaintiff "acknowledges that its customer, defendant, had the right to inspect and reject sod per the Grass Supplier Agreement and Missouri statutes." (#32 at 2.) Medalist made no payment to plaintiff in connection with the Agreement. The estimated quantity of sod in the Agreement was 21 acres.

Todd Bohn is the director of agronomy for Big Cedar Lodge. Bohn holds a bachelor's degree in golf course management and was previously employed as golf course superintendent two other golf courses. Bohn oversees Big Cedar Lodge's golf properties with regard to golf turf maintenance and construction; he also oversees construction for Ozarks Golf and was given authority to act on behalf of Ozarks Golf as it related to the Project. At the relevant time, Jeff Lezon was superintendent of the Project. Around July 7, 2016, and at Bohn's instruction, Lezon visited plaintiff's farm on behalf of Ozarks Golf. Lezon inspected plaintiff's Meyer Zoysia sod accompanied by Woodard,

plaintiff's farm manager. Woodard showed Lezon the 45-acre field of Meyer Zoysia that plaintiff identified as the field from which sod would be harvested for the Project. Lezon inspected and took photographs of the sod and sent the photographs and feedback regarding the sod to Bohn. Bohn concluded that the sod did not meet the quality standards required for the Project and instructed Medalist to reject plaintiff's sod. On July 14, Medalist informed plaintiff that it rejected plaintiff's Meyer Zoysia sod.

Plaintiff did not harvest any Meyer Zoysia sod for the Project and did not deliver any Meyer Zoysia sod to Medalist in connection with the Agreement. Medalist did not submit a written order for delivery for the sod for the Project. Instead, Medalist obtained the sod it needed for the Project from another sod farm.

Plaintiff denies that its sod was of inferior quality, as evidenced by inspections by third parties, including routine periodic inspections by the Missouri Department of Agriculture.

Plaintiff filed this lawsuit against Medalist seeking damages for breach of contract and promissory estoppel. Medalist has moved for summary judgment on both claims.

## II. Legal Standard

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this

burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

## III.  Discussion

Defendant Medalist has moved for summary judgment on each of plaintiff's two counts.

### A.  Breach of Contract

Defendant contends that plaintiff cannot prove any of the elements required to prevail on his breach of contract claim. To prove breach of contract, a plaintiff must show "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4)

4

damages suffered by the plaintiff." *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. *banc* 2010).

Where the facts are not in dispute, the question of whether a contract exists is a question of law. *O.R.S. Distilling Co. v. Brown–Forman Corp.*, 972 F.2d 924, 926 (8th Cir. 1992). "An enforceable contract requires that the parties be (1) competent to contract, (2) be of proper subject matter, (3) have legal consideration, (4) mutuality of agreement and (5) obligation." *Teter v. Glass Onion, Inc.*, 723 F. Supp. 2d 1138, 1159 (W.D. Mo. 2010). "Mutuality of obligation" for an enforceable contract means that "that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Family Snacks of N. Carolina, Inc. v. Prepared Products Co., Inc.*, 295 F.3d 864, 867 (8th Cir. 2002).

Defendant contends that there is no mutuality of obligation or other consideration that takes it beyond plaintiff's mere invitation to defendant to place an order for sod. Although the parties agreed to a price and an estimated amount of sod, the Agreement states that the "Estimated Quantities are a target and not a guaranteed amount." Without a definite and certain quantity terms, defendant contends there can be no mutuality of obligation. In addition, defendant notes that the contract is a "requirements contract" because it related to the quantity of sod it needs for the Project. A "requirements contract" is "one in which one party promises to supply all the specific goods or services which the other party may need during a certain period at an agreed price, and the other party promises that he will obtain his required goods or services from the first party exclusively." *Kirkwood–Easton Tire Co. v. St. Louis County*, 568 S.W.2d 267, 268 (Mo.

5

*banc* 1978) (emphasis added); *see also Essco Geometric v. Harvard Indus.*, 46 F.3d 718, 728 (8th Cir. 1995) (citing *id.*).

An enforceable "requirements contract" thus requires exclusivity, but the Agreement does not obligate defendant to use only plaintiff's sod. Plaintiff suggests that whether the parties intended exclusivity is a question of fact and that, here, defendant reached a "Grass Supplier Agreement" only with plaintiff and not with another sod farm from which defendant received a bid. Further, plaintiff points out that defendant told plaintiff not to sell the sod to anyone else before drafting and sending the Agreement to plaintiff. However, plaintiff was unaware of defendant's communications with the other sod farm, and the parties had never done business before to establish any sort of expectation of an exclusivity arrangement. For example, although plaintiff relies on *Universal Power Sys., Inc. v. Godfather's Pizza, Inc.*, 818 F.2d 667, 671 (8th Cir. 1987), in that case, "the uncontroverted prior course of dealings" between the parties showed that the plaintiff had been the defendant's sole and exclusive supplier for over three years. If the buyer has an "unfettered option" to purchase from another supplier during the term of the contract, there is no exclusivity, and therefore no consideration required for the creation of an enforceable contract. *Structural Polymer Group, Ltd. v. Zoltek Corp.*, 543 F.3d 987, 993 (8th Cir. 2008).

Even if the Agreement were an enforceable contract, plaintiff did not tender conforming goods and defendant promptly rejected those nonconforming goods. Under Missouri's Uniform Commercial Code, if a seller's tender of goods "fail in any respect to conform to the contract," the buyer is entitled to reject some or all of the goods. § 400.2-601 RSMo. Goods "conform to the contract" when they are in accordance with the

obligations under the contract. § 400.2-106(2) RSMo. A rejection of goods is rightful if it is made within a reasonable time after the goods' delivery or tender. § 400.2-602(1) RSMo. After a rightful rejection, the buyer has no further obligations with regard to the rejected goods. § 400.2-602(2)(c).

Plaintiff admits that he understood the Agreement to mean that he was guaranteeing the sod would meet the quality requirements of the customer. Indeed, plaintiff admits in his memorandum that plaintiff "acknowledges that its customer, defendant, had the right to inspect and reject sod per the Grass Supplier Agreement and Missouri statutes." (#32 at 2.) Plaintiff does not dispute that defendant was not satisfied with the quality of plaintiff's sod and so rejected it. Plaintiff suggests that Ozarks Golf, as owner of the Project golf course, should not have had a say in the rejection of the sod. However, there was never a requirement that defendant rely only upon its own employees' determinations in deciding whether the accept or reject the sod. Plaintiff does not dispute that defendant rejected the sod in a timely manner --- before, for example, plaintiff delivered or even harvested the sod. Plaintiff was even able to sell some sod to another buyer. Plaintiff argues that that buyer, along with an expert and the Missouri Department of Agriculture, found nothing wrong with his sod; however, plaintiff cannot create a genuine issue of fact with that evidence. No evidence shows that the sod was of acceptable quality for the Gary Player Design Course, a high-end golf course.

Finally, plaintiff cannot prove the element of damages. Plaintiff seeks the entire price of the Agreement pursuant to § 400.2-709 RSMo, or, alternatively, damages pursuant to § 400.2-708 RSMo. Under § 400.2-709(a), an action for the price only

accrues to the seller when goods have been accepted by the buyer. *R. R. Waites Co., Inc. v. E. H. Thrift Air Conditioning, Inc.*, 510 S.W.2d 759, 761 (Mo. App. 1974). It is undisputed that no acceptance occurred here.

Section 400.2-709(b) allows recovery of the price of "goods identified to the contract if the seller is unable after reasonable effort to resell them…" That section is likewise inapplicable because there were no goods specifically identified to the contract --- no specific sod (of plaintiff's 65 acres of 15-year-old sod) was designated for the Agreement, and no sod was shipped or marked such that it was "identified" to the contract.

As for § 400.2-708 RSMo, that section provides for a measure of lost profits, but they are only available where they are "made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount." *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 918 (8th Cir. 2004) (quoting *Coonis v. Rogers*, 429 S.W.2d 709, 714 (Mo. banc 1968)). Plaintiff must meet the "exacting" requirements of competent and substantial evidence to support an award of lost profits. *Id.* For an established business, such evidence is "proof of the income and expenses of the business for a reasonable time anterior to its interruption, with a consequent establishing of the net profits during the previous period." *Id.* Plaintiff, however, despite planting the Meyer Zoysia crop in 2000, produced evidence of one sale for a small amount of sod. Further, plaintiff has supplied only one year of financial information, and it related to the entirety of plaintiff's sod operation --- not the Meyer Zoysia crop alone. Plaintiff therefore cannot supply the "exacting" proof required by his claim for lost profits.

Plaintiff is unable to prove the elements of his breach of contract claim, and it therefore fails as a matter of law.

B.  **Promissory Estoppel**

Plaintiff claims, in the alternative, that defendant is liable under a promissory estoppel theory. The elements of a promissory estoppel claim are "(1) a promise; (2) promisee detrimentally relies on the promise; (3) promisor could reasonably foresee the precise action the promisee took in reliance; and (4) injustice can only be avoided by enforcement of the promise." *Prenger v. Baumhoer*, 939 S.W.2d 23, 26 (Mo. App. 1997)

Defendant contends that plaintiff's claim fails because there was no binding promise nor was there any detrimental reliance. Plaintiff's claim is based on the allegation that defendant requested a bid from plaintiff for Meyer Zoysia sod and that defendant intended to purchase the sod from plaintiff. The "promise," however, showed no commitment on behalf of defendant to purchase any definite amount of sod. To prevail on a promissory estoppel claim, the "promise must be definite and made 'in a contractual sense.' A supposed promise that is 'wholly illusory' or a mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance." *City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 477 (8th Cir. 2006) (quoting *Prenger*, 939 S.W.2d at 27 n.5; *Kearney Comm'l Bank v. Popejoy*, 119 S.W.3d 143, 146 (Mo. App. 2003)). The undisputed facts show that plaintiff made a bid and defendant told plaintiff not to sell the sod to anyone else, but defendant also told plaintiff that the Project owner had to approve of the quality of the sod. There was no firm commitment to buy anything.

Moreover, plaintiff cannot show detrimental reliance. The sod had been planted more than 15 years earlier. Plaintiff did not harvest the sod. Other than one small sale of sold to a country club, plaintiff did not identify a sale or opportunity to sell any of his 65 acres of Meyer Zoysia.

The doctrine of promissory estoppel is to be applied "with caution, sparingly and only in extreme cases to avoid unjust results." *Kearney Comm'l Bank*, 119 S.W.3d at 146. For the foregoing reasons, this case does not qualify for application of promissory estoppel, and summary judgment will be granted to defendant.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (#25) is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's motion for Daubert hearing (#23) is DENIED as moot.

Dated this   26th   day of February, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE